## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

### COURT FILE NO: 12-CV-808 (JRT/JJK)

| | |
|---|---|
| Eric Backlund and Shannon Backlund<br><br>            Plaintiffs,<br><br>v.<br><br>Messerli & Kramer, P.A., and Steve Doe<br><br>            Defendants | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## OUTLINE OF THE ARGUMENT

**I.**     **When a consumer is represented by an attorney, the FDCPA does not prohibit efforts to collect on a debt; rather, it prohibits debt collectors from continuing to communicate with the consumer about the debt.**

**II.**     **If Messerli & Kramer's position is accepted that once given in an "enforceable" contract, consent can never be revoked, then a debt collector will always be able to communicate with a represented party irrespective of the FDCPA's prohibitions.**

**III.**     **Despite Messerli & Kramer misrepresentation of Mr. Anderson's retainer agreement, the record demonstrates that Mr. Anderson's representation of Mr. and Mrs. Backlund did in fact encompass receiving communications regarding the debt in question.**

**IV.**     **Not only has Messerli & Kramer failed to prove that it properly served a garnishment notice on the Plaintiffs, the evidence in the record suggests that Messerli & Kramer have failed to provide notice in several instances, including sending the garnishment notice to the wrong employer.**

## STATEMENT OF THE CASE

### I.    Jurisdiction and Venue

This case arises under the Fair Debt Collection Practices Act ("FDCPA"). Therefore, subject matter jurisdiction is proper as the Federal District Court for the District of Minnesota has jurisdiction under *15 U.S.C. § 1692k(d)*, which provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." As such, the Federal District Court for the District of Minnesota may hear the FDCPA claims brought by this action.

Venue is proper as well as all parties are located in the District of Minnesota.

### II.    Parties

In addition to the description of the Parties in the Amended Complaint, the Plaintiffs are consumers as defined by the FDCPA. Messerli & Kramer is a both a law firm and a debt collector as defined by the FDCPA. Attorneys who regularly collect consumer debts through litigation are subject to the FDCPA. *See Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (FDCPA applies to lawyers who regularly, through litigation, collect consumer debts); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir.1996) (lawyer and his firm are debt collectors).*

III.    FACTS OF THE CASE

For simplicity sake and for the convenience of the Court, the Plaintiffs will restate such facts where appropriate throughout this opposition brief, citing the facts by the identifying the source.  Likewise, the Plaintiffs will rely on the Exhibits submitted by the Defendants and will cite to them accordingly.

In February of 2011, Eric and Shannon Backlund retained attorney William T. Anderson to represent them.  (See Plaintiff Retainer Agreement.)  The representation was in part with respect to legal issues related to their debts, including a debt that the Plaintiffs had incurred to Capital One.  (See Backlund Aff ¶¶ 1-2.) however, the representation included other concerns, including concerns about employment discrimination.  (Id. at ¶ 6.)  At that time, Mr. Anderson advised the Backlunds to direct any and all communications from debt collectors to his office.  (Id. ¶¶ 3 and 7.)

Prior to March 31, Messerli and Kramer had made more than one attempt to communicate regarding the Capital One debt.  (See Footnote 1 in Defendants Memorandum – p. 4.)  In an effort to inform Messerli & Kramer that the Plaintiffs had retained Mr. Anderson with respect to the debt in question, Shannon Backlund called Messerli & Kramer.  (See Defendant Exhibit 4.)

Shannon spoke with Messerli & Kramer's representative named Steve Kahn, previously identified as Steve Doe.  (Id.)  After informing Steve that she and her husband were represented by an attorney, Steve stated the following:

"Keep in mind now once you have an attorney on record we can only speak to the attorney.  We cannot speak directly to you unless your attorney faxes us

written authorization to talk to you or faxes us a release indicating they no longer represent you.  So, are you sure you want to have an attorney on our record here?" (Id.)

Shannon indicated that she did want to have an attorney on the record.  (Id.) Even after learning that the Backlunds were represented by an attorney, rather than ask for the name and address of the attorney, which were readily ascertainable by Steve, Steve instead went on to ask the following:

"Is this for debt negotiation purposes? Or bankruptcy purposes? Or, for what reason?" (Id.)

In response to Steve's continued questioning, Mrs. Backlund told Steve that he should contact her attorney and ask his questions of her attorney.  (Id.)  She then provided Steve with the name and contact information of their attorney, William T. Anderson.  (Id.)

Despite learning of Mr. Anderson's representation of the Plaintiffs, on May 10, 2011, Messerli and Kramer sent directly to Mr. and Mrs. Backlund a letter, noticing them of a default of the Stipulation of Settlement.  (Defendant Exhibit 5.)  Again, on May 27, 2011, Mr. and Mrs. Backlund received yet another letter from Messerli and Kramer.  The letter was dated May 24, 2011.  (Id.)  The letters demanded payment within 10 days and threatened to enter judgment according to a confession of judgment.  (Id.)

Sometime prior to November 14, 2011, Messerli and Kramer, on behalf of Capital One, issued a garnishment summons to Plaintiff's employer.  On November 14, 2011, Mr. Backlund received a notice of wage withholding from his employer

indicating that it had been served with a Garnishment notice by Messerli & Kramer

for an amount due of $14,637.73.  (See Defendant Exhibit 6; Email marked RD0016).

At no time prior to Mr. Backlund's employer receiving the garnishment notice did the

Plaintiffs receive notice of the garnishment action.  (Backlund Aff ¶ 8.)  The only

garnishment notice that has been presented to the Plaintiffs was at their deposition in

January.  (Id. at ¶ 9.)  That particular garnishment notice had the wrong employer

listed.  (Id.; See Defendant Exhibit 7.)


## SUMMARY OF THE ARGUMENT

When the facts are viewed in the light most favorable to the non-moving party,

Messerli & Kramer violated the Fair Debt Collections Practices Act when it continued

to communicate with the Plaintiffs even after it knew that the Plaintiffs were

represented by an attorney with respect to the consumer debt in question.  Messerli &

Kramer did not have prior consent as it was revoked by the Plaintiffs and no act by

the Plaintiffs constitutes a valid waiver.  In representing the Backlunds, the attorney's

representation encompassed more than merely a bankruptcy; it included representing

the Backlunds with respect to the debt in question.  Further, Messerli & Kramer also

violated the FDCPA when it unfairly garnished wages without the required notice.

## ARGUMENT

**I.** **When a consumer is represented by an attorney, the FDCPA does not prohibit efforts to collect on a debt; rather, it prohibits debt collectors from continuing to communicate with the consumer about the debt.**

Absent consent by the consumer's attorney, once a debt collector learns that a consumer is represented by an attorney, the FDCPA prohibits the collector from continuing to communicate with the consumer about the debt. *1692(c)(a)(2)*. Yet, courts have distinguished between communications that are to provide information from those communications that are aimed at soliciting information. In *Sumner v. Smith, 2012 WL 4711995, at \*4 (E.D. Tenn., 2012)*, the court determined that the defendant was merely providing information to the plaintiff. The *Sumner* court looked at the nature of the communication and determined that it was not intended to collect on a debt; on the contrary, the communication was an effort to "undo the foreclosure sale and reinstate ownership of the property to plaintiff." *Id*. Yet, while the Plaintiffs disagree with Sumner's attempt to carve out certain set of communications that are acceptable so long as the communication is not demanding a payment or otherwise brow-beating a consumer into paying, even the *Sumner* court would take issue with the communications that occurred in this case.

Unlike the *Sumner* communication, the conversation between Steve and Shannon involved the debt collector soliciting information that would assist Messerli & Kramer in collecting on a debt. This violates the FDCPA.

The disclosure required in *§ 1692(e)(11)* highlights Congress's concerns about

communications that solicit information.  Specifically, debt collectors must inform

consumers that "the debt collector is attempting to collect a debt and that any

information obtained will be used for that purpose."  *§ 1692(e)(11).*  When Steve

asked Shannon to reveal the Backlund's intentions regarding whether or not they

would be filing for bankruptcy or looking to settle the debt, he solicited information

that could assist Messerli & Kramer in collecting on the debt.  Defendants'

communication was indeed a communication in connection with the collection of a

debt.

Messerli & Kramer posits several reasons why it contends that the

communication is acceptable.  First, Messerli & Kramer points out that Shannon

called them.  As indicated in the deposition, Shannon had received numerous phone

calls preceding this particular call on March in which Messerli & Kramer was

demanding that Shannon return their calls.  (See SB Depo pp. 26 – 29.)  She called

them to provide them with information about the attorney representation.  (See SB

Depo p. 29.)  Likewise, Shannon's 2 calls to Messerli & Kramer after the May letters

were intended to make sure that Messerli & Kramer directed its communications to

Mr. Anderson instead of the Plaintiffs.  (See Shannon Backlund Affidavit ¶ 11.)

Moreover, the question of who initiated the conversation is irrelevant in this case as

the violations relate to communications AFTER Messerli & Kramer were informed of

the attorney representation.

The second reason posited by Messerli & Kramer is 'that no attempt to collect

the debt was made" by Steve.  In its contention, Messerli & Kramer fails to understand the distinction between 1) an attempt to collect the debt and 2) communicating with respect to the debt.  The FDCPA does not prohibit efforts to collect on debts.  On the contrary, debt collectors can legally bring lawsuits, conduct foreclosures and repossession, seize non-exempt assets, impose garnishments, and otherwise engage in a wide array of legal tactics that are all aimed at actually collecting on a debt.  However, once the collector knows that a consumer is represented by an attorney, under § 1692(c)(a)(2), the debt collector is prohibited from **communicating** with that represented party about the debt.  If a debt collector wishes to have a polite conversation about the weather or their favorite sports team, so long as the communication is not about the debt in question, then such polite conversations are conceivably permissible (though probably ill-advised).  Yet, once the debt collector starts discussing the debt with the represented party, the FDCPA's prohibition takes hold and the communications with the consumer must stop.

Whether a person intends to file for bankruptcy or intends to settle the debt is a common set of questions asked by debt collectors.  The answer can greatly impact the consumer in ways that a "least sophisticated" consumer might not fully understand.  For instance, if a consumer indicated that she is filing for bankruptcy, then the collector may use that information to speed up the collection efforts by immediately filing suit, starting garnishments, and/or conducting asset seizures and levies.  After learning of the intended bankruptcy, the collector may refuse to negotiate a possible

settlement that might allow the consumer to actually avoid bankruptcy. Likewise, if a consumer reveals that she hopes to settle a debt rather than file a bankruptcy, then that can undermine the consumer attorney's ability to negotiate a better settlement. Debt collectors are more likely to negotiate for a smaller settlement when the threat of a possible bankruptcy is still on the table. Knowing that the consumer doesn't want to file for bankruptcy will encourage the collector to hold out for a larger settlement. Moreover, the consumer's attorney may consider the debt to be unenforceable for any number of reasons; yet, any statements made by the consumer will likely be presented in court should the consumer seek to challenge the validity of the debt.

Essentially, when collectors solicit information about the debt from a represented party, it is akin to taking a peek at the hand held by the consumer's attorney. The solicitation undermines the consumer's attorney's ability to represent the client. It turns a game of poker into go-fish for the collector who gets to take away the some if not all of the consumer's best cards. The courts should discourage cheating at cards – and they should discourage debt collectors from soliciting ANY information other than that specifically allowed by Congress.

A careful reading of *15 U.S.C. § 1692c(a)(2)* shows that Congress imposes considerable limits on debt collector communications with represented consumers. Assuming no consent, if the debt collector knows or can readily ascertain the name and address of the consumer's attorney, then "a debt collector may not communicate with a consumer." In other words, when a debt collector learns that a consumer is

represented by an attorney with respect to the debt, the debt collector may ask only two questions: 1) what is the attorney's name and 2) what is the attorney's address. The statute does not give permission to the collector to pay a game of 20 questions. Congress did not say that the collector can ask if the consumer is looking to file for bankruptcy. The debt collector is not authorized to ask if the consumer is looking to settle debts. The debt collector may not ask the consumer where he or she banks or why they are able to pay their attorney and not pay the debt. After all, the communication is "an effort to collect a debt, and any information obtained would be used for that purpose."

This so-called "mini-Miranda" warning mirrors the potential harm to anyone accused of committing a crime. As Justice Robert Jackson's admonition "Any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to the police under any circumstances." *Watts v. Indiana, 338 U.S. 49, 59 (1949)*. Likewise, as observed by Justice Bryer, in *Rubin v. U.S., 524 U.S. 1301 (1998)*, "The complexity of modern federal criminal law, codified in several thousand sections of the United States Code, and virtually infinite variety of factual circumstances that might trigger an investigation into a possible violation of the law, make it difficult for anyone to know in advance just when a particular set of statements might later appear to a prosecutor to be relevant to some investigation." Certainly, any attorney looking to represent his client in a criminal complaint would resent a prosecutor or investigator's efforts to continue to interrogate his client after that client requested his

attorney.  To that attorney and his client, there is no such thing as an "innocuous question."

Why should it be any different for an attorney who is charged with zealously representing his consumer client against an alleged debt, especially if the consumer client is legally recognized as being the least sophisticated consumer?  If a debt collector continues to communicate with a consumer regarding a debt, then that consumer may reveal information crucial to the representation.  Given the potential harms that Congress sited as reasons for passing the FDCPA (increases in job loss, marital instability, invasion of privacy, and increases in personal bankruptcies), one can hardly think of these ills as innocuous.  *See 15 U.S.C. § 1692(a)*.  When Congress's concerns are coupled with the ethical concerns that the Minnesota Supreme Court has for unauthorized communication with a represented party, the adjective "innocuous" is hardly the one that comes to mind – rather, adjectives such as "abusive" or "unfair" are more apt.

The undermining effect of continued communications is even more egregious when one considers the question Steve put to Mrs. Backlund:

**"So, are you sure that you want to have an attorney on our record here?"**

Not only did Steve ask questions beyond the name and address of the Plaintiffs' attorney, not only does Steve's question go beyond merely asking for the scope of the representation; his statements were an invitation to the Plaintiffs to pretend the representation did not exist.  It was an attempt to undermine the

effectiveness of the Plaintiff's attorney representation.  Moreover, it was an attempt to undermine the confidence that the Backlunds had in their attorney.

Messerli & Kramer contends that the "accurate recital of the consequence of representation" is evidence of no violation.  On the contrary, it squares this case precisely with the types of issues the Sumner court lists as objectionable.  In Sumner, the court states that "the letter and agreement also did not warn that any adverse consequences would result…."  The manner in which Steve's statement that Messerli & Kramer can no longer communicate about the debt, when taken in context with the proposed option to not list the attorney on the file, any jury could find that the least sophisticated consumer may have concluded that it would not be in his best interest to restrict the communications.

Moreover, Steve's question, by its very nature, shows that Messerli & Kramer would have been happy to pretend that they knew nothing about the attorney representation.  If Steve did not note the file with the attorney information, then the natural consequence would have been that Messerli & Kramer would have continued to collect – even though their representative would have had actual knowledge of attorney representation.  Such blatant and purposeful disregard of the FDCPA and the Minnesota Rules of Professional Conduct cannot reasonably be seen as "innocuous." On the contrary, taken as true, this Court could reasonably conclude that both Steve and Messerli & Kramer are plausibly liable for this impermissible communication with a represented consumer.

Steve's other statements prove that he was readily able to ascertain the name and address of the consumer's attorney.  In fact, Mr. Anderson's name and contact information was indeed provided to Steve and thus Messerli & Kramer.  Steve and Messerli & Kramer could ask Mr. Anderson their questions about bankruptcy or settlement.

Thus, without consent and being readily able to ascertain the name and address of the consumer's attorney and knowing that the consumer was represented by the attorney, this Court could reasonably conclude that Messerli & Kramer did in fact violate the FDCPA by illegally communicating with the Plaintiffs.  The Defendant's motion for Summary Judgment should be denied.

**II.    If Messerli & Kramer's position is accepted that once given in an "enforceable" contract, consent can never be revoked, then a debt collector will always be able to communicate with a represented party irrespective of the FDCPA's prohibitions.**

Not only is the continued communications by Steve a violation of 1692(a)(2), the two letters (Defendants' Exhibits 5 and 6) also violate the FDCPA.  Despite Messerli & Kramer contentions to the contrary, contractual provisions that obtain consent for communication do not constitute a waiver of the protections in the FDCPA.

Under *Clark v. Capital Credit Collection Services, Inc., 460 F.3d 1162 (9th Cir, 2006)*, the court determined that it would "enforce a waiver of the cease communication directive only where the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692(c)(c)." *Id. at 1171.*  In that

case, the debtor had demanded no further communications with the collector, but in doing so, apparently indicated that she wished to have a return phone call.  The court determined that this request for a return phone call constituted a waiver of the no-communication provision.

While *Clark* recognizes that waivers are indeed possible with the FDCPA, they are not granted out of hand.  "Where waivers are permissible, they are often enforced only if the waiver was 'knowing' or 'intelligent,' which means that the individual has "sufficient awareness of the relevant circumstances and likely consequences" of his decision."  *Id.* *at 1170-71*.  Because the FDCPA involves the "least sophisticated debtor," Clark concluded that a "heightened standard of voluntariness" is required. *Id.* *at 1171*.

In this case, if the court employs a heightened standard of review, then it should consider carefully the timing of the so-called waiver.  Messerli & Kramer obtained the consent via contract prior to Mr. Anderson's representation and prior to the March 31 phone conversation in which Ms. Backlund made it clear that she wanted all communications to be directed to her attorney.  At that time, Messerli & Kramer was directed to communicate with Mr. Anderson as required by § 1692(c)(a)(2).  Yet, despite this directive, Messerli & Kramer sent two letters directly to the Plaintiffs.  Between the time of the March 31st phone conversation and the sending of the two letters, Ms. Backlund gave no indication that she was waiving the requirement that all communications be directed to the Plaintiffs' attorney.  As such,

no waiver was granted after Ms. Backlund invoked her rights under the FDCPA.

Messerli & Kramer complains that Mr. Backlund granted consent and failed to execute a written stipulation changing the so-called consent. However, the contract requires the consent of Messerli & Kramer before any stipulation could be entered that changes the terms of the agreement. (See Agreement ¶ 10.) To suggest that a consumer must obtain consent from the collector before the FDCPA can apply is like the fox guarding the hen house. If Messerli & Kramer can use contract law to forever obtain consent, and then contractually refuse to modify its terms, then every creditor will quickly include such language in all contracts, thereby subverting Congress's clear intent of restricting communications with represented consumers. "Waiver is not appropriate when it is inconsistent with the provision creating the right sought to be secured." *Id. at 1170 (quoting New York v. Hill, 528 U.S. 110, 116 (2000)).*

Consider the FDCPA's language regarding attorney representation. Congress obviously does not expect every consumer to have an attorney the moment they incur a debt. However, at some point in time, the consumer may wish to retain an attorney to provide legal representation. The FDCPA is clearly intended to give the stressed and beleaguered consumer some peace of mind by allowing that consumer to direct communications to his or her attorney. Given that the attorney's involvement in a matter may come about after the debt collector, it would be counter productive to the statutes intent to encourage collectors to arrive early to the game and secure irrevocable contractual rights to communicate with a consumer, even over the

subsequent objections by that consumer's attorney.  The subsequent entry by the

attorney could serve no purpose in reducing the communications directed at the

consumer.  As such, any contractual rights of the debt collector should be subject to

the requirement of the statute.  Once the consumer obtains attorney representation and

invokes her rights under § 1692(c), any previously obtained consent should be

considered revoked and void.

　　　If the consent obtained contractually by Messerli & Kramer was indeed

revoked by Ms. Backlund on March 31, 2011, then the subsequent communications

violated the FDCPA, irrespective of any particular language contained in the contract.

As such, the Defendant's motion for summary judgment should be denied.

**III.   Despite Messerli & Kramer misrepresentation of Mr. Anderson's retainer
agreement, the record demonstrates that Mr. Anderson's representation
of Mr. and Mrs. Backlund did in fact encompass receiving
communications regarding the debt in question.**

　　　While other attorneys who practice bankruptcy law may indeed limit their

representation, Mr. Anderson does not.  Yet, Messerli & Kramer contends that Mr.

Anderson's representation was limited to just bankruptcy.  To support this notion,

opposing counsel has cherry picked a few excerpts from his retainer agreement.

Unfortunately, this contention simply cannot be sustained when one examines the

entire retainer agreement and considers the affidavits of the Plaintiffs.

　　　The bankruptcy code requires attorneys who represent clients for bankruptcy to

clearly detail in writing the terms and conditions of their representation for the

bankruptcy.  *11 U.S.C. § 528.*  However, the code does not require the retainer

agreement to exhaustively explain other areas of legal representation; it does require the attorney to state what those services might be and the fees for such services. *11 U.S.C. § 528(a)(1).*

Because of Title 11's extensive requirements for disclosures and the bankruptcy court's general oversight of fees charged by bankruptcy attorneys, Mr. Anderson has adopted the use of quite possibly the longest retainer agreement in the history of the legal profession. The retainer agreement used by Mr. Anderson certainly indicates that the retainer is intended to detail his representation for not only bankruptcy, but it encompasses general legal services as well. The retainer agreement distinguishes between bankruptcy services and other legal services. On page 7, the retainer agreement states: "I charge a fee for my services. Some of my fees will be a flat fee, whereas others will be based on the amount of time that the service requires to complete. Still other services I take on a contingency basis." The retainer goes on to state that "[f]or certain legal services related to filing for bankruptcy, I agree to charge a flat fee instead of an hourly-based fee." Id. It continues to describe the flat fee aspect of bankruptcy representation and details nearly every conceivable charge that might be incurred by a client in a typical bankruptcy matter.

To distinguish the specific charges for specific bankruptcy services, Mr. Anderson's retainer contemplates an hourly fee for general legal services. Specifically, on page 10-11 of the retainer, in a separate section entitled "Hourly Fee,"

it states as follows:

> My hourly rate for legal services is $200.  My time is billed in minimum
> increments of ten minutes.

> Your file will be billed at this rate anytime I work on your file for legal
> services not covered by any flat fee, including but not limited to time spent
> writing, reviewing and signing letters, file review, legal research, preparing or
> responding to interrogatories or other information gathering procedures,
> preparation of court papers, telephone or conference time with you, relatives,
> friends or other persons involves in the case, depositions, meetings with
> experts, travel time to and from my office, court appearances (which includes
> waiting time for a judge, the opposing attorney or a courtroom to open up) and
> any other time spent and/or work performed relating to your case.

Thus, Mr. Anderson's retainer agreement complies with 11 U.S.C. § 528 by stating

the services and the fees charged for services that are not specific to bankruptcy.

In fact, on page 2 (just under the section highlighted by Messerli & Kramer

regarding the written notice of creditor actions), Mr. Anderson's retainer specifically

includes the legal service of receiving creditor phone calls.

> You must inform me **IN WRITING** of any significant creditor actions, such as
> the scheduling of sheriff sales, the filing of a lawsuit, you being served with
> legal papers, the repossession of any property, any garnishments, bank levies,
> or similar actions.  ***Also, you need to inform me if any creditor engages in any
> abusive behavior, calls you at odd times, or continues to call you after you
> have provided them with my contact information.***  (Emphasis added in last
> sentence.)

Mr. Anderson also has a section of his retainer agreement that encompasses FDCPA

litigation.  (See Anderson Retainer p. 11, Part C.)

Further, despite Messerli & Kramer's attempts to mischaracterize another

attorney's representation of his clients, the Backlunds both view his representation as

broader than merely bankruptcy.  (See Backlund Affidavits.)  Further, for Messerli &

Kramer to attempt to say that Mr. Anderson's representation is limited to bankruptcy ignores the fact that he has recently appeared opposite of their firm in creditor actions in Scott County, McCleod County, and Rice County. Each of those clients signed retainer agreements similar to the one signed by the Plaintiffs. Taken in the light most favorable to the non-moving party, the record does not support the notion that Mr. Anderson's representation did not include this particular debt; instead, the record demonstrates that receiving communications from debt collectors was fundamental to Mr. Anderson's representation of the Plaintiffs with respect to all debts, including the debt in question. Taken in the light most favorable to the non-moving party, the record supports denial of Messerli & Kramer's motion.

**IV.   Not only has Messerli & Kramer failed to prove that it properly served a garnishment notice on the Plaintiffs, the evidence in the record suggests that Messerli & Kramer have failed to provide notice in several instances, including sending the garnishment notice to the wrong employer.**

Messerli & Kramer baldly contends that they properly served notice of garnishment. Yet, rather than submit evidence of certified mail or even a certificate of service, Messerli & Kramer submits several dubious documents for the court's review. For example, Exhibit 8 does not indicate who it believes is the attorney for the Backlunds. They argue that they did not get confirmation of Mr. Anderson's representation until September; yet, their exhibit 8 shows a date of August. Exhibit 8 does not mention Mr. Anderson, does not state his address, nor does it even say Backlund. Quite frankly, it could be anything. Likewise, Messerli & Kramer's garnishment notice included as Exhibit 7 is noticeably addressed to the wrong

employer, remains  UNSIGNED by any attorney, and is even missing the state court

file number.  Curiosity begs the question why this document is being presented as an

exhibit that proves anything other than the fact that Messerli & Kramer may have sent

the notice to the wrong employer.

Perhaps, they had the wrong attorney as well.

At their own deposition of the Backlunds, Messerli & Kramer's counsel asked

both Plaintiffs to examine a garnishment notice.  This garnishment notice is

noteworthy because it was addressed to the wrong employer.  No other garnishment

notices were presented at the deposition, presumably because the only notice that

exists is one addressed to the wrong party.  This is the most likely explanation why no

notices were received by the Backlunds or their attorney.  Moreover, presuming that

Messerli & Kramer actually sent that particular garnishment notice to the wrong

employer, then that is tantamount to admitting an improper third party disclosure –

which is yet another violation of the FDCPA.

In its efforts to convince the court that Mr. Anderson did not represent the

Backlunds, Messerli & Kramer notes that Mr. Backlund was still listed as pro se in

the state court action. Under Rule 104 of the Minnesota General Rules of Practice, if

one party's attorney knows that another party is represented by counsel, "it shall be

provided to the court administrator in writing by the filing party within seven days of

learning [the attorney's identity]." *Rule 104 Minnesota General Rules of Practice*.

Given Minnesota's use of pocket service of process, many lawsuits are served and

settled without the state court ever being aware a dispute even existed. To require attorneys to file documents with the court upon accepting representation in any matter would defeat the purpose of pocket service. After a case is filed, the burden is firmly on the filing party's attorney to notify the court.

Nonetheless, Messerli & Kramer points out that Mr. Anderson did not file a certificate of representation in the state court with respect to this particular debt. Not only is this a misreading of Minnesota Rules of Practice, it serves only to prove that Messerli & Kramer does not always meet its own notice obligations. Given Eric Backlund's pro se status, clearly Messerli & Kramer does not feel that it is important to send required notices to the court, further suggesting that Messerli & Kramer did not mail the required notices to the correct attorney – or to the correct employer. Taken in the light most favorable to the non-moving party, Messerli & Kramer's motion for summary judgment should be denied.

Additionally, Messerli & Kramer's own garnishment argument is self-defeating. On the one hand, they state that they did not know that Mr. Anderson represented the Backlunds with respect to the debt. Yet, they claim to have served the Backlunds with the notice of garnishment by sending it to Mr. Anderson on August 26, 2011. Either they knew of the representation or they didn't. Both can't be true.

Messerli & Kramer failed to provide the required garnishment notices to Mr. Backlund; yet, Messerli & Kramer contends that they served the garnishment notice on Mr. Anderson. However, Mr. Anderson denies having received such a notice. For

the purposes of summary judgment, the facts in the record must be viewed in the light

most favorable to the non-moving party.  As such, the record supports denying

Messerli & Kramer's motion.

## CONCLUSION

The Defendant's Motion for Summary Judgment should be denied.  When the

facts of this case are viewed in a light most favorable to the Plaintiffs, the record

would allow the Court to reasonably conclude that Defendants are indeed liable for

violating the FDCPA.  The facts show that Messerli & Kramer and its representative

illegally communicated with a represented consumer.  Further, the facts show that

Messerli & Kramer did not provide the required notice prior to conducting the

garnishment as required by Minnesota law – an act that likewise violates the FDCPA.

Therefore, Plaintiffs respectfully request that this Court **DENY** the Defendants'

motion for summary judgment.


Dated:  April 4, 2013

/s/ William T. Anderson
_____
William T. Anderson, Esq. (#0388198)
Attorney for Plaintiffs
P.O. Box 1179
Chanhassen, MN  55317
952-472-0987  Phone
952-472-0989  Fax
Email:  will.anderson@wtalaw.com