# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIC BACKLUND and SHANNON BACKLUND, | Civil No. 12-808 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MESSERLI & KRAMER, P.A. and STEVE DOE, | |
| Defendants. | |

William T. Anderson, Post Office Box 1179, Chanhassen, MN 55317, for plaintiffs.

Jennifer M. Zwilling and Derrick N. Weber, **MESSERLI & KRAMER PA**, 3033 Campus Drive, Suite 250, Plymouth, MN 55441, for defendants.

Plaintiffs Eric and Shannon Backlund allege that Defendants Messerli & Kramer, P.A. ("M&K") and M&K's representative, Steve Doe ("Steve"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* The Court granted in part Defendants' previous motion to dismiss. M&K now brings a motion for summary judgment on the remaining claims.

Because the Court finds that there is an issue of material fact regarding M&K's violation of certain provisions of the FDCPA, the Court will grant in part and deny in part M&K's motion. The Court will grant the motion with respect to the Backlunds' claims that the two notices of default sent to Eric Backlund on May 10, 2011, and May 27, 2011, violated 15 U.S.C. § 1692c(a)(2). The Court will deny M&K's motion with respect to

the Backlunds' claim that comments made by Steve during the phone call with Shannon Backlund were prohibited by 15 U.S.C. § 1692c(a)(2). The Court will also deny the motion with respect to the Backlunds' claim that Eric Backlund was not properly served notice of intent to garnish, resulting in a violation of 15 U.S.C. § 1692f.

## BACKGROUND

After the Backlunds failed to make timely payments on a debt with Capital One Bank (USA), N.A. ("Capital One"),[1] M&K was hired to collect the money. (*See* Second Decl. of Jennifer Zwilling, Ex. 1 (Dep. of Eric Backlund 31:1-2), Mar. 14, 2013, Docket No. 35.) Eric Backlund agreed to a payment plan for the debt in a November 2, 2010 stipulation, while represented by Erickson Law Group. (*Id.* 63:18-23, 51:23-52:2, 52:14-21 & Ex. C.) Eric Backlund agreed to make monthly payments, payable to Capital One and mailed to M&K. (*Id.* Ex. C ¶ 3.) The stipulation also provided that in the event of default, Eric Backlund would be provided with "a maximum of three" default notices and stated that if the default

> continues for a period of ten (10) days after mailing of notice to Defendant(s) at Defendant(s) last known address . . . then, in that event, Defendant(s) hereby authorize(s) and empower(s) irrevocably William C. Hicks of MESSERLI & KRAMER P.A., or any other attorney designed by Plaintiff [Capital One] . . . to confess judgment against Defendant(s) in favor of Plaintiff . . . .

---

[1] The debt was approximately $14,523.22. (Am. Compl. ¶ 8, May 11, 2012, Docket No. 8.)

(*Id.*, Ex. C ¶¶ 5-6.)  The stipulation also provided that it could not "be altered or amended in any of its provisions except by the mutual written agreement of the Parties that is signed by both parties."  (*Id.*, Ex. C ¶ 10.)

Prior to March 31, 2011, the Backlunds retained William Anderson ("Anderson") to represent them in their bankruptcy proceedings.  (Second Zwilling Decl., Ex. 2 (Dep. of Shannon Backlund 25:6-14).)  The Retainer Agreement with Anderson provides that it relates to "legal representation for you in pursuing your bankruptcy petition."  (Second Zwilling Decl., Ex. 3 ("Retainer Agreement") at 1.)  The Retainer Agreement provides that the Backlunds had to inform Anderson in writing of any significant creditor action.  (*See id.* at 2.)  Eric Backlund believed that the representation also encompassed legal issues related to his debts and, in particular, his debt with M&K.  (Aff. of Eric Backlund ¶¶ 1-2, Apr. 9, 2013, Docket No. 39.)

On March 31, 2011, Shannon Backlund called M&K.  (Second Zwilling Decl. ¶ 12 & Ex. 4.)  She first received a recorded message that included the warning that, "[i]f your call is regarding a collection account, this firm is considered a debt collector, and our conversation is deemed an attempt to collect on a debt, and any information obtained will be used for that purpose."  (*Id.*)  Shannon eventually spoke to a representative of M&K, Steve.  (*Id.*)  Steve confirmed Shannon Backlund's identity and then stated, "I have to start by saying this is an attempt to collect your debt."  (*Id.*)  Steve then began reviewing the Backlunds' file.  (*Id.*)  When Shannon Backlund informed Steve that she was calling to inform M&K that an attorney now represented her and her husband, Steve told her "once you have an attorney on record we can only speak to the attorney" and

asked if she was sure she wanted to have an attorney on record. (*Id.*) Shannon Backlund said that she did want an attorney on record, and Steve then asked her whether the attorney was for "debt negotiation purposes? Or bankruptcy purposes? Or what reason?" (*Id.*) Shannon Backlund said that M&K would have to contact her attorney, and she provided Steve with the contact information of Anderson. (*Id.*) The Backlunds assert that as a result of this conversation Shannon Backlund "revoked any alleged prior consent that may have been given or obtained by Messerli & Kramer." (Am. Compl. ¶ 23, May 11, 2012, Docket No. 8.)

The parties agree that Eric Backlund subsequently failed to make payments required by the stipulation. On May 10, 2011, and May 27, 2011, M&K sent Eric Backlund notices of default. (Second Zwilling Decl., Ex. 5.) Neither notice was sent to the Backlunds' attorney Anderson. (*See id.*; Am. Compl. ¶ 31.) Because no further payments on the debt were made, on September 9, 2011, judgment was entered against Eric Backlund. (Second Zwilling Decl., Ex. 6.)

M&K contends that on August 26, 2011, it mailed a notice of intent to garnish Eric Backlund's wages to Anderson. (Second Zwilling Decl. Exs. 7-8,[2] ¶¶ 20-21; *see also* Supplemental Decl. of Jennifer Zwilling ¶¶ 7-8, Apr. 11, 2013, Docket No. 42 (stating that the notice was mailed to Anderson and providing the address for Anderson from M&K's computer system).) The Backlunds maintain that neither they nor

---

[2] Exhibit 7 is an unsigned copy of a garnishment notice. Exhibit 8, according to the Zwilling Declaration is a "true and correct copy of [M&K]'s electronic records reflecting that Exhibit 7 was mailed to William T. Anderson"; however, the exhibit only says that a "Ltr/Doc" was "Queued" and "Printed."

Anderson ever received a notice of intent to garnish. (Eric Backlund Aff. ¶ 8; *see also* Am. Compl. ¶ 38.) On or about November 14, 2011, M&K issued a garnishment summons to Eric Backlund's employer and funds were garnished from Eric Backlund's wages. (Second Zwilling Decl. ¶ 22; Am. Compl. ¶ 41.)

Following the Court's resolution of M&K's motion to dismiss, the Backlunds allege that (1) M&K violated 15 U.S.C. § 1692c(a)(2) during Steve's conversation with Shannon on March 31, 2011; (2) M&K violated § 1692c(a)(2) by sending the Backlunds notices of default on May 10, 2011, and May 27, 2011; and (3) M&K served garnishment summons on Eric Backlund's employer without first serving him a notice of intent to garnish, thereby failing to comply with Minn. Stat. § 571.924 and violating 15 U.S.C. § 1692f. M&K moves for summary judgment on all of the Backlunds' claims.

## ANALYSIS

I.  **STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. VIOLATION OF 15 U.S.C. § 1692c(a)(2) BY PHONE AND WRITTEN COMMUNICATIONS

The Backlunds allege that parts of the phone conversation on March 31, 2011, and the notices of default on May 10, 2011, and May 27, 2011, each constituted unlawful communications with a represented party in violation of 15 U.S.C. § 1692c(a)(2). That section provides

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt – . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . .

15 U.S.C. § 1692c(a)(2).

### A. March 31, 2011 Phone Call

If any comments made by Steve during the phone call with Shannon Backlund after she informed M&K she was now represented were made "in connection with the collection of any debt," those comments were prohibited by 15 U.S.C. § 1692c(a)(2). M&K argues[3] that the entire conversation between Steve and Shannon Backlund complied with the FDCPA because a debt collector is permitted to inquire about the scope of the representation under the FDCPA.

Section 1692c(a)(2) prohibits communication with a consumer "in connection with the collection of any debt . . . if the debt collector knows the consumer is represented

---

[3] M&K also argue that Anderson was not actually representing the Backlunds regarding the Capital One debt. But M&K stated at oral argument that it sent the notice of intent to garnish to Anderson instead of the Backlunds because after this conversation it considered Anderson the attorney of record.

by an attorney **with respect to such debt**." 15 U.S.C. § 1692c(a)(2) (emphasis added). Although the Eighth Circuit has not addressed the issue, the Seventh Circuit concluded that "whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009). Seventh Circuit courts look to numerous factors, including the relationship between the parties, the purpose and context of the communication as a whole, and whether there is an explicit demand for payment. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010).[4]

The Court finds that there is an issue of material fact regarding whether M&K's additional questions on March 31 were in violation of the FDCPA. Viewing the facts in the light most favorable to the Backlunds, Steve's questions could be found to be directed to assisting M&K in collecting debt.[5] *See* 15 U.S.C. § 1692c(a)(2). In fact, both M&K's

---

[4] *See also, e.g., Nash v. Green Tree Servicing, LLC*, No. 1:12-cv-278, 2013 WL 1867357, at * 11 (E.D. Va. May 2, 2013) ("[C]ourts consider the following factors: (1) whether the 'animating purpose' of the communication was to induce payment; (ii) the purpose and context of the communications, viewed objectively, and (3) whether the communication was in response to a request of the debtor."); *Sumner v. Smith*, No. 3:11-CV-120, 2012 WL 4711995, at *4 (E.D. Tenn. Oct. 3, 2012) (concluding that a letter to undo a foreclosure sale is "not the type of abusive, harassing or fraudulent communications the FDCPA seeks to prohibit"); *Bieber v. Associated Collection Servs., Inc.*, 631 F. Supp. 1410, 1417 (D. Kan. 1986) (concluding that an additional question regarding whether the debtor was planning to file a bankruptcy petition, "a legitimate business inquiry" was "not so extensive as to have been the kind of additional 'communication' prohibited by subsection c(a)(2)").

[5] M&K's argument that its inquiry into the scope of representation "reinforces the respect Messerli had for the privacy of consumers" rings hollow. (Def.'s Reply Mem. in Supp. at 4, Apr. 11, 2013, Docket No. 41.) Once Shannon Backlund had identified her attorney to M&K in the context of a phone call about her debt, M&K could have, if needed, asked the attorney its questions regarding scope of representation without violating the Backlunds' confidentiality. However, M&K apparently decided these inquiries were not needed because it claims it sent Anderson notices related to Backlunds' debt, but it provides no evidence that it had previously inquired into the scope of his representation.

recording at the beginning of the call and Steve stated that any information collected during the call would be used to collect debts. Moreover Steve's statements explaining that M&K would not be able to talk to the Backlunds if they were represented could be motivated by the fact that continued access to the Backlunds would make it easier to collect their debt. Because a reasonable jury could conclude that Steve's statements were made to assist M&K in the collection of debt, the Court will deny M&K's motion for summary judgment on this ground.

### B. Notices of Default

The Backlunds also claim that the two notices of default send to Eric Backlund on May 10, 2011, and May 27, 2011, violated 15 U.S.C. § 1692c(a)(2). Section 1692c(a)(2) provides that communication with a represented debtor is only prohibited without the prior consent of the consumer or the express permission of a court of competent jurisdiction. The parties agree that the Backlunds consented to receive these notices in the stipulation executed in November 2010, but the parties dispute whether this prior consent is sufficient to waive the protections of the FDCPA.

The Eighth Circuit has not considered whether consent may waive the protections of the FDCPA. However, in *Clark v. Capital Credit Collection Services, Inc.*, the Ninth Circuit considered whether a collection agency's phone call to Mrs. Clark in response to her request for information violated § 1692c(c)[6] in light of letters sent by Mr. Clark to the collection agency directing them not to call Mrs. Clark. 460 F.3d 1162, 1168 (9th Cir.

---

[6] Section 1692c(c) addresses when a debt collector may communicate with a consumer who has indicated they wish communication to cease. In contrast, § 1692c(a)(2) addresses when a debt collector may communicate with a consumer who is represented by an attorney.

2006). The court found that although, in general, a party may waive "a benefit of a provision of a statute . . . enacted . . . for his protection," not all rights are waivable and "waiver is not appropriate when it is inconsistent with the provision creating the right sought to be secured." *Id.* at 1170 (internal quotation marks omitted). The court went on to find that "a debtor may waive the rights created by a cease communications directive." *Id.* The waiver must, however, be knowing and voluntary, and the Ninth Circuit "will enforce a waiver of the cease communication directive only where the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692c(c)." *Id.* at 1170-71. The court concluded that "even the least sophisticated debtor would recognize that Mrs. Clark's request for information constituted consent" for the return phone call "in order to provide the specific information she requested." *Id.* at 1172.

The Court finds that Eric Backlund consented to receive default notices in the stipulation agreement, thereby waiving his rights under the FDCPA. Eric Backlund's stipulation is "prior consent of the consumer given directly to the debt collector," 15 U.S.C. § 1692c(a), and his agreement stipulated that this consent could not be altered except in writing. The Court declines to find that the FDCPA would trump a written contract permitting notice of intent to collect a debt – particularly when the consumer made no effort to alter the written contract. Because Eric Backlund consented to receive the notices of default, the Court will grant M&K's motion for summary judgment on this ground.

## III.  NOTICE OF INTENT TO GARNISH

The Backlunds allege that by serving garnishment summons to Eric Backlund's employer without first serving him a notice of intent to garnish, M&K failed to comply with Minn. Stat. § 571.924 and violated 15 U.S.C. § 1692f.  Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  One example of conduct prohibited by the section is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  A violation of "§ 1692f(1) can be premised on a violation either of a Minnesota statute or common law."  *Reeves v. Messerli & Kramer, P.A.*, Civ. No. 11-729, 2012 WL 926063, at *4 (D. Minn. Mar. 16, 2012).  The Backlunds argue that it was unlawful or unfair for M&K to garnish Eric Backlund's wages without the notice required by Minnesota law.

If the record showed that M&K mailed Anderson a notice of intent to garnish, that would be sufficient to demonstrate proper service of the Backlunds.  Minn. R. Civ. P. 5.02(a) ("Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be upon the attorney . . . ."); *see also* Minn. R. Civ. P. 5.02(c) ("Service by mail is complete upon mailing.").  M&K claims the evidence it submitted shows it mailed Anderson a notice of intent to garnish, but M&K's records merely shows that a letter and envelope were printed – not that the notice was mailed or the address the notice was mailed to.  The Court therefore finds that there is a factual dispute regarding whether M&K properly served the Backlunds because M&K's

records are not clear. The Court will therefore deny M&K's motion for summary judgment on this claim.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Messerli & Kramer, P.A.'s Motion for Summary Judgment [Docket No. 33] is **GRANTED in part** and **DENIED in part**, as follows:

**1.** The motion is **DENIED** as to

a. the Backlunds' claims that the March 31, 2011 phone call violated 15 U.S.C. § 1692c(a)(2) and

b. the Backlunds' claim that garnishment without proper notice supports a violation of 15 U.S.C. § 1692f(1).

**2.** The motion is **GRANTED** as to the Backlunds' claims that the May 10, 2011 and May 27, 2011 letters violated 15 U.S.C. § 1692c(a)(2).

DATED: August 9, 2013  
at Minneapolis, Minnesota.

\_\_\_\_s/ John R. Tunheim\_\_\_\_  
JOHN R. TUNHEIM  
United States District Judge